IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
)
v. ) Case No. 1:17-cr-197
) Hon. Liam O'Grady
CHRISTOPHER RODRIGUEZ-SORIANO, )
)
Defendant. )
)

## MEMORANDUM OPINION

Before this Court is the Government's Motion to Exclude the Testimony of Brian Cutler (Dkt. 33). The Government seeks to exclude Defendant's proffered expert Dr. Brian L. Cutler, who would testify as an expert in social and forensic psychology about interrogation techniques and the phenomenon of false confessions. *See* Dkt. No. 33-1; Dkt. No. 44 at 1-2.

The Court reviewed the pleadings, as well as an audio recording and transcript of the interview during which Mr. Rodriguez-Soriano confessed. Based on this review and oral arguments heard on December 1, 2017, the Court found that Dr. Cutler's proposed testimony raised insurmountable reliability issues and would invade the province of the jury. The Government's motion was therefore **GRANTED**. The Court issued an Order to that effect on December 1, 2017 to give notice to the parties as they prepared for the December 6 trial date. The memorandum opinion that follows more fully explains the Court's reasoning in granting the Government's motion.

### I. Factual Background

On November 15, 2016, a District of Columbia Metropolitan Police Department Homicide Detective informed federal agents that an incarcerated cooperator had told him that the

1

cooperator owned a gun that had been used in a homicide, and that Mr. Rodriguez-Soriano had purchased the gun for the cooperator. Dkt. 44 at 2. An agent obtained records from retailer Gander Mountain which appeared to show that Mr. Rodriguez-Soriano had purchased two pistols on July 25, 2016. *Id.*

On November 18, 2016, two federal agents interviewed Mr. Rodriguez-Soriano about the guns. *Id.* When initially questioned about the firearms, Mr. Rodriguez-Soriano claimed that the guns had been stolen from his home, and that he did not know who had stolen them, although he suspected an acquaintance named "D." *Id.* After approximately 15 minutes, one of the agents told Mr. Rodriguez-Soriano that he did not believe Mr. Rodriguez-Soriano's explanation for why he no longer had the guns. *Id.* He told Mr. Rodriguez-Soriano that lying to federal agents is a crime punishable by five years in prison and a large fine. *Id.* at 2-3. The agent said that he "knew" that Mr. Rodriguez-Soriano had purchased the guns for someone else, because "we spoke with him." *Id.* at 3. He informed Mr. Rodriguez-Soriano that one of the guns had been used in a homicide, and he encouraged Mr. Rodriguez-Soriano to cooperate with the ongoing federal investigation. *Id.* Mr. Rodriguez-Soriano ultimately told the agents that he purchased the guns for two people. *Id.* The agents drew additional details from Mr. Rodriguez-Soriano during the remainder of the interview. *Id.* That confession is the subject of the proposed expert testimony.

Dr. Cutler would have testified that individuals are susceptible to changing how they think, act or behave in response to social influence, that certain practices employed by law enforcement in interrogations are designed to pressure a suspect to confess, that such practices may increase the likelihood that a person would provide false statements to law enforcement, that innocent persons may falsely confess to crimes they did not commit, and that these practices

were employed in the interrogation of Mr. Rodriguez-Soriano. *See* Dkt. 33-1 at 2. The Government objected to such testimony on the grounds that Dr. Cutler's opinion was neither reliable nor relevant, and would usurp the role of the jury with respect to credibility issues. *See* Dkt. 33 at 1.

## II. Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which allows for the admission of expert testimony if: (1) it is potentially helpful to the jury; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the testimony is applied to the facts of the case. *See* Fed. R. Evid. 702. The Supreme Court provided a judicial gloss for this rule in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

The Fourth Circuit has interpreted *Daubert* as requiring a two-part test. *See United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995). First, the testimony must be supported by appropriate scientific knowledge, or validation; and second, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations omitted). There are at least four factors to help the Court determine whether the first prong of this test is satisfied: "(1) whether the theory or technique used by the expert can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; (4) the degree of the method's or conclusion's acceptable within the relevant scientific community." *Id.* In determining whether the second prong has been met, the Court must be mindful of other evidentiary rules and Rule 403 in particular. *Id.* The Court has broad discretion in deciding whether to admit expert testimony, but it would be an abuse of that discretion to make an arbitrary decision. *See United States v. Belyea*,

*II*, 159 F. App'x 525, 529 (4th Cir. 2005). Instead, the Court is required to make a nuanced, case-by-case analysis of whether the proposed expert testimony will assist a trier of fact. *Id.*

### a. Reliability of the Evidence

The Fourth Circuit has not directly opined on the admissibility of expert testimony regarding false confessions. Most circuit courts to directly consider the admission of expert testimony on false confessions have determined such testimony is inadmissible. *See, e.g., United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014); *United States v. Dixon*, 261 F. App'x 800, 810 (5th Cir. 2008); *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Similarly, district courts have found false-confession expert testimony inadmissible. *See, e.g., United States v. Khweis*, No. 1:16-cr-143, Dkt. No. 188 (E.D. Va. June 2, 2017) (O'Grady, J.).

One basis for excluding false confession expert testimony is that the science of false confessions is unreliable. *See, e.g.*, Mem. Op., *United States v. Yazzie*, No. 1:11-cr-01876-WJ, Doc. 145 at 4-5 (D.N.M. Sept. 17, 2012). There is no "known or potential error rate" that can be attributed to false confession studies." *Id.* The multitude of variables at issue in any given interrogation precludes any effort to reduce the field of inquiry to a science. Thus, while an expert could identify "risk factors," he cannot opine on the truthfulness of a particular defendant's testimony with any degree of certainty. *Id.* Indeed, during a colloquy with this Court, Dr. Cutler acknowledged that he would be unable offer an opinion as to whether any particular statement by Mr. Rodriguez-Soriano (or any other person) was in fact false, or as to whether Mr. Rodriguez-Soriano's confession was false.

In addition to the questionable reliability of false confession science in general, the Court has serious doubts about the reliability of Dr. Cutler's testimony in particular. Dr. Cutler's understanding of this subject matter appears to be substantially derivative of Dr. Richard. A.

Leo's research in this field. However, numerous courts have excluded as unreliable testimony from Dr. Leo that is similar to the proffered testimony here. *See, e.g., Yazzie*, No. 1:11-cr-01876-WJ, Doc. 145 at 4-5; *People v. Kowalski*, 492 Mich. 106, 133-34 (2012); *United States v. Deuman*, 892 F. Supp. 2d 881, 885-88 (W.D. Mich. 2012). Dr. Leo's work has also been the subject of academic criticism, in particular from Judge Paul Cassell. Judge Cassell reviewed Dr. Leo's work and found that may of the suspects Dr. Leo claims confessed falsely are actually almost certainly guilty. *See* Paul G. Cassell, *The Guilty and the "Innocent": An Examination of Alleged Cases of Wrongful Conviction from False Confession*, 22 HARV. J. L. & PUB. POL'Y 523 (1999). Cassell and other academics have also called Dr. Leo's methodology into doubt. *See, e.g.*, Major James R. Agar, II, *The Admissibility of False Confession Expert Testimony*, 1999-AUG Army Law. 26, 42-43 (1999). For these reasons, the Court finds that Dr. Cutler's proposed expert testimony is unreliable.

    b. *Ability to Assist the Jury*

The Court finds that even if Dr. Cutler's proposed testimony were reliable, it would fail the second prong of the analysis addressing relevance. Dr. Cutler's testimony would be unhelpful to the jury, which is fully capable of assessing the truthfulness of Mr. Rodriguez-Soriano's alleged confession. Such testimony would thus usurp a critical function of the jury. *See Hill*, 749 F.3d at 1258 (internal citations omitted).

This is not to say that false confession expert testimony would be unhelpful to a jury in every case. *See Belyea*, 159 F. App'x at 530. However, such testimony is inappropriate in *this* case. Here, unlike in *Belyea*, the defense presented no corroborating evidence to suggest that Mr. Rodriguez-Soriano's confession was false. There is no evidence that a federal agent ever lied to Mr. Rodriguez-Soriano during the interview or that Mr. Rodriguez-Soriano suffered from any

mental health issues. There is no evidence that Mr. Rodriguez-Soriano is addicted to drugs or alcohol, or that he was under the influence of either at the time he was interviewed by the agents. Mr. Rodriguez-Soriano's interview with the agents took place in his mother's home, and the interview was scheduled at his convenience. *See* Dkt. 33 at 3.

Given these facts, Dr. Cutler's proposed testimony would also raise serious concerns under Rule 403 by confusing the issues and creating a risk of unfair prejudice to the United States. The Court finds that the risk of misleading the jury substantially outweighs whatever marginal probative value such testimony might offer. This is particularly true given that Dr. Cutler's testimony would be entirely generalized and not specific to this case, as described above.

### III. Conclusion

For these reasons, the Court **GRANTED** the Government's Motion to Exclude (Dkt. No. 33). Defendant's proposed expert Dr. Brian Cutler was not permitted to testify at trial.

December 11, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge